# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

WILLIAM HOLLAND, JR.,

    Plaintiff,

v.

RICHARD J. GRAHAM, *Warden*,

    Defendant.

Civil Action No. TDC-17-2395

## MEMORANDUM OPINION

Plaintiff William Holland, Jr., an inmate at Western Correctional Institution ("WCI") in Cumberland, Maryland, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that the conditions of his confinement are unconstitutional and that he was denied medical treatment. Holland seeks monetary damages and injunctive relief. Pending before the Court is Defendant Warden Richard Graham's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Although Holland was advised of his right to oppose the Motion, he has not filed a memorandum in opposition to the Motion. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Warden's Motion, construed as a Motion for Summary Judgment, will be GRANTED.

## BACKGROUND

During the time relevant to the Complaint, Holland was housed in Housing Unit 4 at WCI. The cells numbered 1-14 and 25-38 in Housing Unit 4 ("the Cells") house inmates on disciplinary segregation and have windows that overlook the prison compound. At some unspecified time in the past, the windows in these cells could be opened and inmates in the cells would "frequently

maintain loud and disruptive dialogue" with general population inmates who passed through the compound. Graham Decl. ¶ 3, Mot. Summ. J. Ex. 7, ECF No. 14-10. The Warden reports that this dialogue often involved "vulgar, insolent, and threatening language" and included discussion relating to "the flow of contraband to the general population." *Id.* Because of these problems, the windows in the Cells were sealed shut.

On May 11, 2017, on the Warden's order, the windows in the Cells were unsealed so that they could be opened. According to the Warden, he decided to unseal the windows "[d]ue to the summer months approaching" and based on conversations with the inmates in which they agreed that they would not yell out of the windows. *Id.* ¶ 4. For approximately two weeks, the windows were unsealed. On May 30, 2017, however, the Warden ordered that they be resealed. The Warden asserts that he made this decision because having the windows open resulted in "loud and disruptive behavior" and a rise in violence. *Id.* Holland contends that the Warden only opened the windows because an audit team was coming to WCI, with the implication that he ordered them resealed after the audit team had completed its visit.

According to the Warden, the resealing of the windows did not have a detrimental effect on air circulation because all cells at WCI have "a ventilation system that circulates clean, filtered air at regular intervals of four times per hour." *Id.* ¶ 5. He asserts that cell temperatures are closely monitored and has submitted temperature logs showing that temperature readings in Holland's wing between April and July 2017 ranged from 69 to 82 degrees Fahrenheit.

Also on May 30, 2017, correctional officers deployed chemical agents against inmates in Housing Unit 4. According to Holland, after he and other inmates asked to speak with the Warden about his decision to reseal the cell windows, officers in riot gear officers attacked and "shot pellets out of rifles and shotguns that produce chemical agents that burns the human skin and causes you

2

to choke and gag." Compl. 3, ECF No. 1. Holland states that he was temporarily traumatized, that the fumes caused him chest pains and shortness of breath, and that he was denied medical treatment.

According to Correctional Officer Curran McKenzie, the May 30, 2017 incident began because certain inmates in Housing Unit 4 were noncompliant and had to be extracted from their cells. Holland was not one of the inmates and was not housed in a cell from which an extraction took place. McKenzie states that after the extractions occurred, Holland did not complain about pepper spray exposure or request medical care. Prison records show that on May 30, 2017, extractions were performed on Cells 4-A-4, 5, 8, and 9 because of weapons possession, while Holland was housed in Cell 4-A-6 that day.

Holland's medical records reveal no request for medical care in connection with the May 30 incident and that Holland did not receive treatment for any respiratory problems for several months following that date. Although Holland was evaluated on June 15, 2017 for back pain from an old football injury, Holland did not report any respiratory problems during that visit. On August 9, 2017, Holland had a chronic care appointment for asthma, a condition dating back to at least 2010. During that visit, Holland did not mention the May 30 incident.

Holland filed his Complaint on August 21, 2017. Construed liberally, the Complaint alleges that the Warden violated the Eighth Amendment to the United States Constitution in that the sealing of the windows, the pepper spray attack, and the denial of medical care each constituted cruel and unusual punishment.

## DISCUSSION

In his Motion, Graham seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56 based on several grounds, including that (1) Holland has failed

to allege sufficient facts to state a plausible claim for relief; (2) the Warden is not liable because there is no vicarious liability for a § 1983 claim; and (3) the Warden is entitled to qualified immunity.

I.  **Legal Standards**

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the Complaint, the Court may dismiss the Complaint if it does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have

some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion and the notice by the Court to Holland advising him of the provisions of Rules 12 and 56. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature. *See Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011). Here, Holland has not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter, nor has he submitted a memorandum in opposition to the Motion. Under these circumstances, the Court will construe the Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine"

if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

Because Holland is self-represented, his submissions are liberally construed. *See Erickson*, 551 U.S. at 94. Nevertheless, the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526.

## II. Conditions of Confinement

In his first claim, Holland asserts that the sealing of the windows in the Cells created a "fire, health, and safety hazard" and placed him at risk of "all sorts of germs and diseases." Compl. 3. Conditions of confinement which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions which are merely "restrictive or even harsh," however, "are part of the penalty that criminal offenders pay for their offenses against society" and do not necessarily violate the Eighth Amendment. *Id.*

"In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

"Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630,

634 (4th Cir. 2003). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Holland's conditions of confinement claim fails most fundamentally because he has neither alleged nor established any injury resulting from the closed windows. Although Holland asserts that the sealing of the windows creates a fire hazard and places him "at a high risk" of suffering harm from airborne germs and disease, Compl. 3, he has not alleged any physical harm or illness that has resulted. His speculative allegation of possible future harm does not constitute a "serious or significant physical or emotional injury" as required to state an Eighth Amendment claim. *Strickler*, 989 F.2d at 1381.

Moreover, courts generally have not found that the sealing of cell windows, standing alone, creates unconstitutional conditions of confinement. *See, e.g., Tuell v. Commissioner of Corrections*, No. RDB-14-1283, 2015 WL 4994022, at *7 (D. Md. Aug. 19, 2015) (rejecting an asthmatic inmate's challenge to windows being "bolted shut from the outside" for several months a year); *Williams v. Bishop*, No. RWT-12-1616, 2014 WL 4662427, *10 (D. Md. Sept. 17, 2014) (rejecting a conditions-of-confinement claim based on a sealed cell window because the plaintiff had no injury); *Long v. Fauver*, No. 90-1317-CSF, 1992 WL 281110, at *3 (D.N.J. Oct. 5, 1992). Some courts have concluded that sealed windows combined with the lack of an adequate HVAC system or extreme temperature may amount to unconstitutional conditions of confinement. *See, e.g., Blackmon v. Garza*, 484 F. App'x 866, 870-72 & n.4 (5th Cir. 2012) (denying summary judgment where cell windows were sealed, there was no air conditioning, and the heat index inside the prison ranged from 90 to over 130 degrees Fahrenheit on 51 days over a two and a half month

period); *Carty v. Farrell*, 957 F.Supp. 727, 736 (D.V.I. Jan. 30, 1997) (finding unconstitutional conditions where, among other problems, the cell winders were sealed, the ventilation system did not function properly, and the air was "fetid and odorous"). However, Holland does not allege that the prison has an inadequate ventilation system, nor does he dispute the Warden's assertions that "[a]ll cells are equipped with a ventilation system that circulates clean, filtered air at regular intervals of four times per hour," that cell temperatures are monitored closely, and that they ranged from 69 to 82 degrees. Graham Decl. ¶ 5. Under these circumstances, Holland has not shown that the sealed windows constituted cruel and unusual punishment. Thus, the Court concludes that the Warden is entitled to summary judgment on this claim.

### III. Denial of Medical Care

In his second claim, Holland asserts that he was improperly denied medical care after he was subjected to chemical spray by correctional officers on May 30, 2017. An Eighth Amendment claim relating to inadequate medical care requires a showing of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko*, 535 F.3d at 241. The subjective knowledge component requires that the prison official is "subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Neither an "inadvertent failure to provide adequate

medical care" nor negligence in diagnosing or treating a medical condition amounts to deliberate indifference. *Estelle*, 429 U.S. at 105-06.

Holland's claim fails because he has neither alleged nor provided evidence to establish that the Warden had any personal responsibility for any lack of medical care. In a § 1983 claim, a defendant cannot be found liable under a theory of vicarious liability or *respondeat superior*. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Thus, the Warden's status as the official in charge of WCI does not alone subject him to liability. Under § 1983, any liability imputed to supervisory officials must be supported by evidence that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Here, Holland has not alleged that the Warden, the sole Defendant in this case, personally denied Holland access to medical care following the May 30 incident. Moreover, Holland has failed to suggest or establish that Graham had actual or constructive knowledge that a subordinate officer ignored or interfered with Holland's ability to access medical care. Indeed, Holland fails to identify who denied him medical treatment or show that such individual was aware of his need for medical care. Thus, the Warden cannot be held liable for an Eighth Amendment claim relating to denial of medical care.

Finally, even if the Warden could be deemed responsible, the record does not support the conclusion that Holland was, in fact, denied medical care. Notably, Holland's medical records for the months following the May 30, 2017 incident reflect that although Holland had several visits to medical care providers, including a June 15, 2017 visit relating to back pain, he made no mention of any current or past physical harm resulting from a chemical agent. The Court will therefore grant summary judgment to the Warden on this claim.

## IV. Use of Force

Although Holland does not explicitly assert a claim of excessive force arising out of the alleged use of a chemical agent on May 30, 2017, to the extent that he intended to advance such a claim, the Court finds that it would fail. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Consideration of a defendant's mental state is key to a constitutional claim, because "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Factors to consider in determining whether the force employed was excessive include: the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Id.* at 321.

Because Holland does not allege that the Warden was personally involved in or even had knowledge of the May 30 use of force, his claim fails because he has failed to establish the requirements for supervisory liability. *See supra* part III. Even if the Warden could somehow be deemed responsible for the use of the chemical agent, the record evidence does not support the conclusion that the use of the chemical agent violated the Eighth Amendment. The Warden has submitted documentary evidence establishing that correctional officers conducted cell extractions on other inmates in Housing Unit 4 that day, but did not target either Holland or his cell. Holland offers no evidence to refute these facts or to establish that the use of chemical agents against the identified noncompliant inmates was excessive. Holland also fails to provide any sworn statement or other evidence to refute the declaration of Captain McKenzie stating that Holland was not an inmate targeted for cell extraction and therefore was affected by the pepper spray only inadvertently. Under these circumstances, the evidence does not support the conclusion that Holland was the victim of action intended "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Thus, to the extent that Holland has asserted an Eighth Amendment claim arising from the use of a chemical agent, the Court will grant summary judgment to the Warden on that claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion, construed as a Motion for Summary Judgment, will be GRANTED. A separate Order shall issue.

Date: February 26, 2019

THEODORE D. CHUANG
United States District Judge